Henry T. SANDERS, Plaintiff-Appellee,

v.

JOHN NUVEEN & CO., INC., et al.,
Defendants-Appellants.

Nos. 74-2047, 75-1260.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1976.

Decided April 22, 1977.

As Modified on Denial of Rehearing En
Banc June 8, 1977.

Milton H. Cohen, Allan Horwich, Chicago, Ill., for defendants-appellants.

Harvey L. Pitt, Gen. Counsel, Washington, D. C., for Securities & Exchange Comm.

Richard Orlikoff, Robert J. Peters, Chicago, Ill., for plaintiff-appellee.

Before CASTLE, TONE and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On April 19, 1976, the United States Supreme Court granted defendants' Petition for Certiorari, and vacated this court's order entered on October 30, 1975, in *Sanders II*,[1] 524 F.2d 1064 (7th Cir. 1975), and remanded the case for reconsideration in light of the Supreme Court's intervening decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), reversing 503 F.2d 1100 (7th Cir. 1974). On May 28, 1976, the defendants moved this court to summarily reverse the judgment below. That motion has been taken with the case.

---

1. In *Sanders I*, 463 F.2d 1075 (7th Cir. 1972), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972), this court considered four issues certified by the district judge pursuant to 28 U.S.C. § 1292(b), and held generally that promissory notes with maturity dates not exceeding nine months and offered to the public as an investment were "securities" within the definition of the Securities Exchange Act of 1934; and also that it was error to permit creditors of the issuer of the short term securities with antagonistic interests to the class of purchasers represented by plaintiff to intervene without notice to that class.

As the facts are fully set forth in *Sanders I and II* only a brief factual recap for convenience is included here. This is a class action brought for and in behalf of forty-two purchasers of fifty-three short term notes in the aggregate face amount of $1,612,500 purchased during a seven month period in 1969 and 1970. Defendant John Nuveen & Co., Inc., was found to be the underwriter of that commercial paper issued by Winter & Hirsch, Inc., a consumer finance company, during that period just prior to the default of Winter & Hirsch, Inc., on its obligations in 1970. The remaining defendant corporations were found to be "controlling persons" of Nuveen.

In *Sanders II* the principal question was stated to be "whether an underwriter of short term commercial paper who acted in the mistaken but honest belief that financial statements prepared by certified public accountants correctly represented the condition of the issuer is liable to its customers for losses sustained as a result of the issuer's default." 524 F.2d at 1066. The district court held Nuveen liable on the theory that it breached a duty to make reasonable inquiries that would have led to the discovery of issuer's fraud. This court affirmed.

The problem now is to determine the effect of *Hochfelder* on this case. In *Hochfelder* the majority held that "scienter", that is, an intent to deceive, manipulate or defraud, is required to establish a private cause of action for damages under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 thereunder, 17 C.F.R. 240.10b–5. Negligence is not sufficient. The Court added: "In certain areas of the law recklessness is considered to be a form of intentional conduct for purposes of imposing liability for some act. We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5." 425 U.S. at

194 n. 12, 96 S.Ct. at 1381. The Court further noted that there are certain express civil remedies subject to significant procedural restrictions provided in the Securities Act of 1933,[2] allowing recovery for negligent conduct including the remedy provided in § 12,[3] and explained that "Section 12(2) creates potential civil liability for a seller of securities in favor of the purchaser for misleading statements or omissions in connection with the transaction. The seller is exculpated if he proves that he did not know or in the exercise of reasonable care, could not have known of the untruth or omission."[4]

Plaintiff's complaint as amended asserts claims under §§ 12(2) and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(2) and 77q, §§ 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. 240.10b–5.

In *Sanders II* this court found Nuveen's liability to rest on Rule 10b–5.[5] The first issue to be resolved is whether or not that holding remains valid. That depends on whether the record justifies a finding of "scienter" as defined in *Hochfelder*. In *Sanders II* this court viewed Nuveen's conduct as being mistaken but honest in belief. The trial court based its holding on negligence. Upon reconsideration, we find that the record is barren of any showing of actual intent to deceive, manipulate or defraud. Thus, the judgment cannot be supported on that basis.

In *Hochfelder* the Supreme Court left open the question of whether or not in some circumstances "reckless behavior", which was not there defined, could constitute scienter for civil liability under § 10(b) and Rule 10b–5. We believe, contrary to Nuveen's urging, that "reckless behavior" can be sufficient to constitute scienter. We have already so held in *Bailey v. Meister Brau, Inc.*, 535 F.2d 982 (7th Cir. 1976), and

---

**2.** 15 U.S.C. § 77a *et seq.*

**3.** *Hochfelder, supra,* 425 U.S. at 208–209, 96 S.Ct. 1375.

**4.** *Hochfelder, supra* at 209 n. 27, 96 S.Ct. at 1388.

**5.** *Sanders II,* 524 F.2d at 1069.

recently and more specifically in *Sundstrand Corporation v. Sun Chemical Corporation et al.*, 553 F.2d 1033 (7th Cir. 1977). *Sundstrand* explains that the standard in *Bailey* is akin to a reckless standard though phrased in terms of "blinded by conflict of interest" and "wantonly ignored". *Sundstrand* more definitely defines recklessness in the context of omissions by adopting as a base the definition in *Franks v. Midwestern Oklahoma Development Authority*, CCH Fed.Sec.L.Rep. ¶ 95.786 at 90.850 (W.D.Okl. 1976):

> reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

In view of the Supreme Court's analysis in *Hochfelder* of the statutory scheme of implied private remedies and express remedies, the definition of "reckless behavior" should not be a liberal one lest any discernible distinction between "scienter" and "negligence" be obliterated for these purposes. We believe "reckless" in these circumstances comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence. We perceive it to be not just a difference in degree, but also in kind. Plaintiff argues for something less, relying in part on *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), where Mr. Justice Rehnquist, writing for the Court about the tort of misrepresentation and deceit, stated that "the typical fact situation in which the classic tort misrepresentation and deceit evolved was light years away from the world of commercial transactions to which Rule 10b–5 is applicable." 421 U.S. at 744–745, 95 S.Ct. at 1929. That comment is made in relation to privity of dealing. Personal contact between potential defendant and potential plaintiff in "today's universe of commercial transactions" is recognized as the exception and not the rule. The Court in *Blue Chip Stamps* limited the benefit of

Rule 10b–5 to actual purchasers or sellers of securities, and excluded those who claim they did not enter into a transaction which later turned out to be better than they had anticipated because of an alleged misleading and pessimistic prospectus. That case does not hold that none of the old concepts of fraud and deceit, or recklessness, have application in the present context.

■ In the present case the trial judge found that Nuveen, due to negligence, made misleading statements of material fact and omitted to make statements of material fact necessary to make the statements not misleading in selling the notes to members of the plaintiff class. Underlying is the finding that Nuveen's investigation of the issuer was deficient and that an appropriate investigation would have revealed the issuer's fraud. There was no finding that Nuveen's acts of commission or omission were reckless, that is, that they were so highly unreasonable and such an extreme departure from the standards of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it. On reviewing the record we likewise find no basis to sustain the judgment because of any reckless conduct on the part of Nuveen.

■ Therefore, at this point, as we now view the case, we must determine whether we are compelled to allow Nuveen's motion for summary reversal of the judgment below, or whether upon remand to this court the permissible scope of our reconsideration is broad enough to permit consideration of other pleaded issues which were originally present in the case and which were not expressly or impliedly ruled upon by the Supreme Court in *Hochfelder*. We may not contravene a specific instruction or disregard the disposition of any question of law contained in the mandate. Nuveen relies on *Hermann v. Brownell*, 274 F.2d 842 (9th Cir. 1960), *cert. denied* sub. nom., *Herrmann v. Rogers*, 364 U.S. 821, 81 S.Ct. 56, 5 L.Ed.2d 50, but that case stands only for the proposition that upon remand the juris-

diction of an appellate court is limited to those particularized points which were assigned for consideration, if the mandate was in that form. However, the remand in the present case was broadly stated to be "for further consideration in light of *Hochfelder*." Other issues not within the compass of the mandate are thereby not precluded from consideration. *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). See also *Illinois Bell Telephone Co. v. Slattery*, 102 F.2d 58 (7th Cir. 1938), *cert. denied*, 307 U.S. 648, 59 S.Ct. 1045, 83 L.Ed. 1527 (1939).

Following that view we must next examine the other causes alleged by plaintiff and an additional approach urged by Amicus Curiae.[6] Plaintiff asserts that judgment in his behalf may be sustained under § 17(a) of the 1933 Act, on the ground that Nuveen violated Rule 27 of the National Association of Security Dealers, Inc., or under § 12(2) of the 1933 Act. Amicus Curiae injects a new issue not framed by the parties by urging liability on the basis that defendants violated § 5 of the Securities Act and are liable to plaintiff under § 12(1) of the Securities Act because Nuveen sold unregistered securities to plaintiff. Amicus Curiae argues that the short term notes were not exempt from registration by virtue of § 3(a)(3) of the '33 Act, 15 U.S.C. § 77c(a)(3).[7] The basis of

that argument is an alleged intent on the part of Congress to distinguish between transactions which were deemed to be within the realm of an investment context and thereby necessarily included within the protection of the securities laws and those transactions which were of an ordinary business nature, the regulation of which would unduly interfere with routine commercial practices. Although we have great doubt about the merits of the new argument advanced by Amicus Curiae, we need not pass upon it since plaintiff has not advanced it, *Knetsch v. United States*, 364 U.S. 361, 370, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960), and, in fact, disclaims it.

The other claims which were pleaded by plaintiff deserve further consideration.

Plaintiff argues that the judgment should be sustained under § 17(a) of the 1933 Act,[8] although no reference was made to that issue in the judgment order of the district court. Plaintiff takes the position that the implication of a private civil right of action under § 17(a) of the 1933 Act is settled, relying in part on *Schaefer v. First National Bank of Lincolnwood*, 509 F.2d 1287 (7th Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976), and *Surowitz v. Hilton Hotels Corporation*, 342 F.2d 596 (7th Cir. 1965), (dictum), *rev'd on other grounds*, 383 U.S. 363, 86 S.Ct. 845,

---

**6.** The Securities and Exchange Commission filed a brief as Amicus Curiae after remand to this court.

**7.** Section 3(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(3), provides in pertinent part:

> 3(a) Except as hereinafter expressly provided, the provisions of this title shall not apply to any of the following classes of securities:
>
> . . . . .
>
> (3) Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited;

**8.** Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, provides, in pertinent part:

17. (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser.

. . . . .

(c) The exemptions provided in Section 3 shall not apply to the provisions of this section.

15 L.Ed.2d 807 (1966), but also recognizes that a contrary view exists, *Reid v. Mann,* 381 F.Supp. 525 (N.D.Ill.1974). Nuveen disputes that a private right of action may be maintained under § 17(a), relying in part on Judge Friendly's often quoted concurring opinion in *S.E.C. v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir. 1968) (en banc), *cert. denied sub nom. Coates v. S.E.C.,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1968),[9] and *Blue Chip Stamps v. Manor Drug, supra,* for the proposition that implied remedies should not be created if comparable express remedies are provided, such as § 12(2) of the 1933 Act. Plaintiff, on the other hand, interprets *Blue Chip Stamps* to imply that § 17(a) does give rise to a private cause of action. However, in *Blue Chip Stamps* the Court stated that it was expressing "no opinion on whether § 17(a), in light of the expressed civil remedies of the 1933 Act, gives rise to an implied cause of action."[10]

For the purposes of this case we see no need to try to resolve those opposing views in an effort to decide whether a private right of action exists under § 17(a) where it no longer has the accompanying

support of a viable 10b–5 claim as noted in *Schaefer v. First National Bank of Lincolnwood, supra,* and considered in *Reid v. Mann, supra.* We need not reach that question since we are persuaded by defendants' additional position that even if such a private cause of action does exist under § 17(a), it would require proof of scienter. Proof of scienter is unquestionably required as to subsections (1) and (3) which specifically refer to fraud. Subsection (2), on the other hand, does not expressly refer to fraud. In the 1933 Act, Congress expressly provided for civil liability in Sections 11 and 12(2)[11] premised upon negligent wrongdoing. Sections 11 and 12(2) are subject to specific restrictions: (a) the one year statute of limitations; (b) discretion in the court to require a bond; and (c) placing on defendants the burden of proving that they reasonably believed their statements to have been true, etc. Section 17(a) is not subject to similar restrictions. After noting that 10(b) is not subject to procedural limitations which apply to the express civil remedies in the 1933 Act allowing recovery for negligent conduct, the Court, in *Hochfelder,* stated:

9. That quotation is as follows:

[T]here is unanimity among the commentators, including some who were in a peculiarly good position to know, that § 17(a)(2) of the 1933 Act—indeed the whole of § 17—was intended only to afford a basis for injunctive relief and, on a proper showing, for criminal liability, and was never believed to supplement the actions for damages provided by §§ 11 and 12. *See* Landis, Liability Sections of the Securities Act, 18 Am.Acct. 330, 331 (1933); Douglas and Bates, Federal Securities Act of 1933, 43 Yale L.J. 171, 181–82 (1933); 3 Loss, Securities Regulation 1785–86 (1961). When the House Committee Report listed the sections that "define the civil liabilities imposed by the Act" it pointed only to §§ 11 and 12 and stated that "[t]o impose a greater responsibility [than that provided by §§ 11 and 12] . . . would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the public." H.Rep. No. 85, 73d Cong., 1st Sess. 9–10 (1933).

10. 421 U.S. at 734 n. 6, 95 S.Ct. 1917 at 1924.

11. Section 12(2) of the 1933 Act, 15 U.S.C. § 77 *l*(2) provides:

Any person who—

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

We think these procedural limitations indicate that the judicially created private damages remedy under § 10(b)—which has no comparable restrictions—cannot be extended consistently with the intent of Congress, to actions premised on negligent wrongdoing. Such extension would allow causes of action covered by §§ 11, 12(2) and 15 to be brought instead under § 10(b) and thereby nullify the effectiveness of the carefully drawn procedural restrictions on these express actions. 425 U.S. at 210, 96 S.Ct. at 1389. (Footnotes omitted.)

Even if we assume that an implied cause of action does exist under § 17(a), for the same reasons expressed by the Court in *Hochfelder* we do not believe that such cause of action can be premised upon negligent wrongdoing. See *Texas Gulf Sulphur Co.*, 401 F.2d at 867–8; *Vacca v. Intra Management Corp.*, 415 F.Supp. 248 (E.D.Penn. 1976); *Thompson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 401 F.Supp. 111, 115 (W.D.Okla.1975). In the absence of scienter, judgment for plaintiff cannot be sustained under § 17(a) in this case.

Plaintiff next argues that the judgment should be sustained on the ground that Nuveen violated Rule 27 of the National Association of Securities Dealers, Inc.,[12] which provides generally that member-securities dealers must establish, maintain and enforce written procedures for the sale of securities to assure compliance with applicable securities laws. The trial court in its judgment order found that Nuveen violated Rule 27 and had an obligation to establish, maintain and enforce written procedures for the purchase and sale of the notes and other commercial paper, and for the supervision of employees engaged in the purchase and sale of commercial paper. In *Sanders II*, this court saw no need to decide whether plaintiff's losses could fairly be attributable to Nuveen's apparent violation of Rule 27.[13] We must now resolve that issue.

To support a view that violations of the rules of exchanges and associations promulgated in accordance with federal security laws may provide a basis for private damage actions under those laws, plaintiff cites *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135 (7th Cir. 1969), cert. denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88, and *S.E.C. v. First Securities Co. of Chicago*, 463 F.2d 981 (7th Cir. 1972), cert. denied sub nom. *McKy v. Hochfelder*, 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972). In *Buttrey*, the "know your customer rule" of the New York Stock Exchange was held to be actionable in private suits for damages where the defendant was alleged to have had adverse knowledge about a customer, including knowledge of fraudulent activity, but proceeded to do business with the customer in direct violation of specific admonitions in the rule. In *Buttrey*, the court cited *Colonial Realty Corpo-*

---

12. Rule 27 of the National Association of Securities Dealers, Inc., provides in pertinent part:

Written procedures
(a) Each member shall establish, maintain and enforce written procedures which will enable it to supervise properly the activities of each registered representative and associated person to assure compliance with applicable securities laws, rules, regulations and statements of policy promulgated thereunder and with the rules of this Association.
Responsibility of member
(b) Final responsibility for proper supervision shall rest with the members. The member shall designate a partner, officer or manager in each office of supervisory jurisdiction, including the main office, to carry out the written supervisory procedures. A copy of such procedures shall be kept in each such office.

Written approval
(c) Each member shall be responsible for keeping and preserving appropriate records for carrying out the member's supervisory procedures. Each member shall review and endorse in writing, on an internal record, all transactions and all correspondence of its registered representatives pertaining to the solicitation or execution of any securities transaction.
Review of activities and annual inspection
(d) Each member shall review the activities of each office, which shall include the periodic examination of customer accounts to detect and prevent irregularities or abuses and at least an annual inspection of each office of supervisory jurisdiction.

13. 524 F.2d at 1069 n. 12.

ration v. Bache & Co., 358 F.2d 178, 182 (2nd Cir. 1966), cert. denied, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56, for the following summary of the principle involved:

> "What emerges is that whether the courts are to imply federal civil liability for violation of exchange or dealer association rules by a member cannot be determined on the simplistic all-or-nothing basis urged by the two parties; rather, the court must look to the nature of the particular rule and its place in the regulatory scheme, with the party urging the implication of a federal liability carrying a considerably heavier burden of persuasion than when the violation is of the statute or an SEC regulation. The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law." Buttrey, 410 F.2d at 142.

The court in Buttrey noted that the facts alleged were tantamount to fraud and thereby gave rise to a private civil damage action. 410 F.2d at 143.

In First Securities, supra, subsection c of Rule 27 was involved. That subsection specifically requires each member to review correspondence relative to the solicitation or execution of any security transaction. Contrary to Rule 27(c), the president of First Securities enforced a rule forbidding anyone other than himself to open mail addressed to him. The restriction of access to the mail enabled the president of First Securities to perpetrate a fraud. In finding an implied right to a civil damage action under Rule 27(c), the court stated:

> "We have no doubt that the enforcement of Nay's rule regarding the opening of mail is sufficient without more to constitute a violation of Rule 27. Such violations provide a basis for private damage actions where the rule violated serves to

protect the public. Avern Trust v. Clarke, 415 F.2d 1238, 1242 (7th Cir. 1969); Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra, 410 F.2d at 142–143. First Securities is properly liable for Nay's fraud because of its violation of Rule 27 of the N.A.S.D." 463 F.2d at 988.

■ The case at bar is distinguishable from both First Securities and Buttrey since the district court did not find and our reading of the record in the present case does not support a finding of fraud. Thus, we are unable to accept plaintiff's argument that the district court's judgment may be supported on an implied cause of action under Rule 27.

Furthermore, we are mindful of the admonition in Colonial against adopting a simplistic all-or-nothing approach in deciding whether a private civil damage action exists. Thus, although unnecessary to our decision here since fraud is not present, we note the difficulty in deciding the question simply on the basis of fraud without considering at the same time the specific rule or subsection in issue, which may, as here, differ in specificity from the types of rules involved in Buttrey and First Securities and thus make less appropriate the conclusion that an implied cause of action exists. Cf. Lange v. H. Hentz & Co., 418 F.Supp. 1376 (N.D.Tex.1976); Plunkett v. Dominick & Dominick, Inc., 414 F.Supp. 885 (D.Conn. 1976).[14]

■ Plaintiff has one remaining possible basis to support the judgment which was pleaded, § 12(2) of the 1933 Act. Although the trial court made certain incomplete findings of fact pertinent to § 12(2) consideration, the court did not reach a conclusion of law as to liability under that section. In Sanders II, 524 F.2d at 1069, this court did not rely on § 12(2) of the 1933 Act in

---

14. Subsequent to the decisions in Colonial, Buttrey, and First Securities, the Supreme Court considered the question of when a private remedy is implicit in a federal statute. Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26; see also Securities Investor Protection Corp. v. Barbour, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); Piper v. Chris-Craft Indus-

tries, Inc., —— U.S. ——, ——, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); McDaniel v. University of Chicago, 548 F.2d 689 (7th Cir. 1977). Even if we assume that this same analysis is applicable in deciding whether there exists a civil cause of action for damages for violation of an NASD rule, our conclusion would be unaffected because of the absence of proof of fraud.

**798**

reaching that decision because the district court had not found any violation of that section.[15] Further, we agreed with Nuveen that the evidence did not indicate that all members of the class had relied on express recommendations by Nuveen. We also noted that plaintiff argued on appeal that the credit reports of the issuer disseminated by Nuveen were prospectuses within the meaning of the Act, but that the district court had made no such finding.[16] For the purposes of the *Sanders II* decision only, we accepted Nuveen's argument that the Lieber, Bleiweis & Company audit was appropriately certified, and that nothing in the audits themselves gave Nuveen any special reason to question their accuracy. Since that latter argument was accepted solely for the purposes of the now vacated decision in *Sanders II* and was in direct conflict with the district court's judgment order, findings of fact and conclusions of law, the prior acceptance of that argument is now no longer valid. Neither the district court nor this court in *Sanders II* passed on the merits of a § 12(2) claim as pleaded. *Hartford Life Insurance Co. v. Blincoe*, 255 U.S. 129, 136, 41 S.Ct. 276, 65 L.Ed. 549 (1921); *Connett v. City of Jerseyville*, 110 F.2d 1015, 1029 (7th Cir. 1940). That claim therefore remains open and unresolved.

Regrettably, at this stage in this protracted litigation we cannot resolve the remaining § 12(2) issue on the present record. We are compelled to reverse and remand for further proceedings as may be necessary for the district court to make additional findings of fact and reach conclusions of law to support such judgment as the district court may reach on the possible liability of Nuveen under § 12(2) of the 1933 Act.

Defendants' Motion for Summary Reversal is denied.

Reversed and Remanded for further proceedings consistent with this Opinion.

### ON MOTION FOR REHEARING EN BANC

Plaintiff-appellee Henry T. Sanders, on May 6, 1977 filed what he labeled a Petition for Rehearing en banc or for Modification of Judgment which raised four issues:

1. Appellee reads the opinion as requiring a purchaser of securities to prove reliance in order to recover under § 12(2) of the Securities Act of 1933, and argues to the contrary. This court did not in *Sanders II* or in the present case directly address the issue of reliance under § 12(2) as the district court had made no findings on the § 12(2) allegation of liability. No opinion on that issue was therefore expressed or intended to be expressed.

2. Appellee reargues that the judgment of the district court should have been affirmed on the ground that Nuveen violated Rule 27 of N.A.S.D. No additional comment is required on that issue.

3. The appellee also moves that the judgment be modified to provide that each party shall bear its own costs on appeal as being equitable in the circumstances of this case. We agree and the judgment therefore shall be modified accordingly.

4. Finally, the appellee argues that it did not disclaim the § 12(1) theory advanced by the SEC as *amicus curiae*, and seeks a ruling of this court that it be permitted on remand to amend its complaint to assert claims under § 12(1) of the 1933 Act against defendants. This court understood the counsel for plaintiff at oral argument, as mentioned in the opinion, to disclaim the SEC theory which had not been pleaded or argued. However, the disclaimer of that issue under those circumstances as a basis for affirming the judgment on appeal does not foreclose the plaintiff's proposed amendment to their complaint, a matter we

**15.** Nor did the district court conclude that plaintiff failed to establish a prima facie case under § 12(2) or that defendants had successfully asserted a defense to that claim. In the absence of such conclusions, and reading the record, findings, and conclusions of law as a whole, we are unable to agree with defendants'

suggestion that the district court held against plaintiff on the question of liability under § 12(2) and reach our holding upon considering defendants' arguments on the merits.

**16.** 524 F.2d at 1069.

leave to the discretion of the trial judge upon remand.

Subject to the above modification regarding costs, the Motion for Modification is denied.

On consideration of the appellee's "Motion for Rehearing en banc," no judge in active service having requested a vote thereon, the motion is denied.