891 F.2d 295
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
Douglas E. PATTY, Kenneth R. Thompson, Helen S. Wilson,
Roger A. Saevig, Defendants,
and
Herbert E. Slezinger, Jr., Defendant-Appellant.
 No. 88-6395.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 1, 1989.
Decided Dec. 1, 1989.
 
 Before SNEED, REINHARDT, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Slezinger appeals from the district court's order granting summary judgment against him for violation of § 10(b) of the Securities Act of 1934, 15 U.S.C. § 78(j)(b) (1982), and SEC Rule 10b-5, 17 CFR § 240.10b-5 (1987).
 
 
 3
 In 1983, the SEC brought an action against five former directors and officers of the Heritage Bank, and its parent company, Heritage Bancorp, for securities violations in connection with the sale of Heritage stock.[1] Specifically, the SEC charged that the defendants, including Slezinger, manipulated the market for Heritage stock by artificially increasing demand through various stock contests[2] and employee stock purchase plans.[3] According to the SEC, these efforts were manipulative devices that artificially increased the price of the bank stock.
 
 
 4
 In April 1978, Slezinger was vice president and manager of Heritage Bank. Fifteen months later, Slezinger became the executive vice president of Heritage Bancorp. In July 1982, Slezinger became president of the Heritage Bank. He maintains that as president he was responsible for "the Bank's internal day-to-day activities. Overall bank policy, long-range planning, and stock programs were the exclusive province of the Bank and Bancorp's directors."
 
 
 5
 According to the SEC, Slezinger was an active participant of both the stock contests and the employee stock purchase plans. Slezinger not only received substantial monetary awards in the stock contests but as president of the bank, Slezinger continued the stock contests and instructed the bank officers that the stock contests were part of their job requirements. The SEC points to documents in which Slezinger describes the stock contests as a "method to stabilize the price of Heritage stock."
 
 
 6
 The two employee stock purchase plans, adopted as a remedy to stabilize the price of Heritage stock, were approved at board meetings attended by Slezinger as an ex-officio member. Following the meeting, Slezinger was provided copies of reports that the employee stock purchase plans "can provide significant support for the market price ... through open market purchases."
 
 
 7
 According to the SEC, this evidence conclusively establishes that Slezinger knew, or at least was reckless in not knowing that the stock contests and the employee stock purchase plans created a "false impression that certain market activity [was] occurring when in fact such activity [was] unrelated to actual supply or demand." Hundahl v. United Benefit Life Ins., Co., 465 F.Supp. 1349, 1360 (N.D.Tex.1979); see In re Halsey, Stuart & Co., 30 SEC 106, 112 (1949) ("Actual buying with the design to create activity, prevent price falls, or raise prices for the purpose of inducing others to buy is to distort the character of the market as a reflection of the combined judgments of buyers and sellers, and to make of it a stage-managed performance.").[4] Finally, the SEC contends that the manipulative devices generated a large amount of buying activity in Heritage stock.
 
 
 8
 On February 24, 1988, the day trial was scheduled to commence, the district judge stated that based on "the undisputed evidence [and] based on what I've looked at, a summary judgment motion would have to [be] granted." The SEC then asked if the district court judge would "entertain a motion at this time"; the judge agreed to hear arguments regarding whether or not summary judgment was appropriate. In its supplemental findings and conclusions of law the district court stated that "[a]t the commencement of trial [the SEC] moved for summary judgment."
 
 
 9
 Slezinger argues that a motion for summary judgment must be in writing and served to the opposing party under Fed.R.Civ.Proc. 56(c), citing Sequoia Union High School Dist. v. United States, 245 F.2d 227, 228 (9th Cir.1957). Since the district court ruled on an oral motion for summary judgment, he contends that the judgment in favor of the SEC must be reversed. We find this argument to be without merit.
 
 
 10
 As recently noted by the Supreme Court, "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Logic dictates that if a district court can grant summary judgment sua sponte, it cannot lose the power to grant that relief simply because one of the parties makes an oral motion for summary judgment. The oral request cannot destroy the court's inherent power, and granting of the request cannot be error if the court could have granted relief sua sponte.
 
 
 11
 A district court may grant summary judgment sua sponte "if the losing party 'had a full and fair opportunity to ventilate the issues involved in the motion.' " Waterbury v. T.G. & Y. Stores Co., 820 F.2d 1479, 1480 (9th Cir.1987) (quoting Cool Fuel Inc. v. Connett, 685 F.2d 309, 312 (9th Cir.1982)). The facts of this case clearly show that Slezinger had a full and fair opportunity to submit to the court all of his evidence. The district court specifically found, after review of all of the undisputed evidence as represented by both parties' documentary evidence and exhibits at the outset of trial, that summary judgment should be granted for the SEC.
 
 
 12
 In Sequoia, the losing party was not on notice to come forward with all of his evidence, as no motion for summary judgment was ever offered for submission. Moreover, there were no supporting or opposing affidavits, and only incomplete facts and evidence for the court to consider. In the present case, the district court granted summary judgment at the commencement of trial when both parties were ready for trial and had developed all the necessary facts and evidence. The district court had the power and the evidentiary basis to grant the SEC's summary judgment motion in this case. We next address the merits of the district court's summary judgment ruling.
 
 
 13
 In order to establish a cause of action under Rule 10b-5, the SEC must demonstrate that Slezinger had the necessary scienter. In Vucinich v. Paine, Webber, Jackson & Curtis, Inc., we stated that scienter is an intent to deceive or defraud and includes recklessness. 739 F.2d 1434, 1435 (9th Cir.1984). "Rather than being 'merely a greater degree of ordinary negligence,' recklessness is closer to 'a lesser form of intent.' " Id. (quoting Pegasus Fund, Inc. v. Laraneta, 617 F.2d 1335, 1341 (9th Cir.1980), citing Sanders v. John Nuveen & Co., 554 F.2d 790, 793 (7th Cir.1977)). Under the definition of recklessness, the danger of misleading buyers or sellers must be actually known or so obvious that any reasonable person would be aware of it; the omission must be highly unreasonable and must involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care. Sanders, 554 F.2d at 794. "The question is not merely whether [Slezinger] had knowledge of the undisclosed facts; rather, it is the danger of misleading buyers [that] must be actually known or so obvious that any reasonable man should be legally bound as knowing." Schlifke v. Seafirst Corp., 866 F.2d 935, 946 (7th Cir.1989) (quoting Sundstrand Corp. v. Sunchemical Corp., 553 F.2d 1033, 1045 (7th Cir.), cert. denied, 434 U.S. 875 (1977)) (emphasis in original).
 
 
 14
 According to the district court, "[t]he exhibits irrefutably showed that [Slezinger] had notice of the manipulative scheme from which at the very least he should have known of its existence and at a minimum [Slezinger]'s involvement in this scheme rises to the level of recklessness as required to support a finding of liability under section 10(b) and Rule 10b-5." Supplemental Findings at 4. In its colloquy with counsel the district court stated "the documents do make clear collectively as to things that [Slezinger] knew or should have known, things that he read or should have read, that he was aware that things were being done that would have a manipulative effective, and that he did, whether intentionally or unintentionally, [Slezinger] did actually do things." Id. at 54.
 
 
 15
 According to Slezinger, he had "no reasonable basis for believing that [the employee stock sales contests and the employer stock purchase plans] would have or would be likely to have a manipulative impact on the market." Slezinger does not contest the fact that he had knowledge of the two programs but argues that he was unaware that the programs would have a manipulative effect on the market and would thereby mislead buyers and sellers. Slezinger was prepared to present in support of his claim, to-wit: The testimony of two lawyers who advised Slezinger that stock contests and employee stock purchase plans were not prohibited; his own testimony that as branch manager and later, as president, he did not create, or implement the stock purchase plans; testimony that Slezinger had opposed the loan transaction for the second employee stock purchase plan; and evidence that the Examiners for the Federal Deposit Insurance Corporation viewed the employee stock sales as a moderately aggressive extension of benign incentive programs used at many banks.
 
 
 16
 The district court judge based its summary judgment ruling on all of plaintiff's and defendant's exhibits; the plaintiff's and defendant's proposed findings of fact and conclusions of law; and accepted the findings of fact which were not disputed. The district court, however, failed to properly consider Slezinger's evidence and merely stated that defendant's testimony would not be significant in the face of the overwhelming evidence of defendant's recklessness. Under Rule 56, the district court judge must view this evidence in a light most favorable to Slezinger. We believe that Slezinger has raised factual questions as to whether the danger of misleading buyers was actually known by Slezinger or was so obvious that any reasonable person would be legally bound as knowing. We reverse the district court's sua sponte order granting summary judgment to the SEC and remand for further proceedings consistent with this opinion.
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 All defendants except Slezinger entered into a consent decree with the SEC. Heritage stock was traded over-the-counter and was quoted on the National Association of Securities Dealers Automated Quotation System (NASDAQ)
 
 
 [2]
 In the "stock contests," officers of the bank competed to find buyers for Heritage stock. Heritage Bank made loans to facilitate the purchases and the certificates for the stocks bought were placed in the bank's vault. Prizes were awarded for the officers most successful in each contest in locating buyers
 
 
 [3]
 In the employee stock purchase plans, officers of the bank purchased substantial quantities of stock in excess of that committed to be purchased by the participating employees
 
 
 [4]
 Although Section 9(a)(2) of the Securities Exchange Act of 1934, 15 U.C.S. Section 78i(a)(2), is limited to securities traded in a national securities exchange, the conduct prohibited by this section also violates the general anti-fraud provisions of Rule 10b-5. See United States v. Charnay, 537 F.2d 341 (9th Cir.1975), cert. denied, 429 U.S. 1000 (1976)