**Phyllis MILLER, Plaintiff,**

**v.**

**MATERIAL SCIENCES CORPORATION, William H. Vrba, Robert G. Evans, Gerald G. Nadig, and James J. Waclawik Sr., Defendants.**

**No. 97 C 2450.**

United States District Court, N.D. Illinois, Eastern Division.

June 25, 1998.

Jules Brody, Howard T. Longman, Stull, Stull & Brody, New York, NY, Joseph H. Weiss, Law Offices of Joseph H. Weiss, New York, NY, James Gerard Bradtke, Soule & Bradtke, Chicago, IL, Karen L. Morris, Patrick F. Morris, Morris and Morris, Wilmington, DE, Robert D. Allison, Robert D. Allison & Associates, Chicago, IL, for Phyllis Miller, plaintiffs.

Garrett B. Johnson, Bradley E. Lerman, Dani R. James, Kirkland & Ellis, Chicago,

IL, for Material Sciences Corporation, William H. Vrba, Robert G. Evans, Gerald G. Nadig, James J. Waclawik, Sr., defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Phyllis Miller has filed a second amended complaint asserting a class action against Material Sciences Corporation ("Material Sciences") and various current or former officers of Material Sciences (collectively "defendants"). In Count I, plaintiff asserts that defendants committed fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5. In Count II, plaintiff asserts that defendants committed fraud in violation of § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). Defendants have moved to dismiss the second amended complaint pursuant to Fed.R.Civ.P. 9(b) and Fed.R.Civ.P. 12(b)(6). Defendants argue that Count I must be dismissed because plaintiff has failed to "state with particularity facts giving rise to a strong inference that [they] acted with the required state of mind," as required by 15 U.S.C. § 78u–4(b)(2). They argue that Count II must be dismissed because a cause of action under § 20(a) may not be brought in the absence of a primary violation, such as that claimed in Count I.

### DISCUSSION

In 1976, the Supreme Court held that a private cause of action for damages will not lie under § 10(b) and Rule 10b–5 when the plaintiff attributes mere negligence to the defendants, as opposed to an "intent to deceive, manipulate, or defraud." *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Court specifically declined to address "the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5." *Id.* at 193 n. 12, 96 S.Ct. 1375. The following year, the Seventh Circuit held that " 'reckless behavior' can be sufficient to constitute scienter" in a private cause of action under § 10(b) and Rule 10b–5. *Sanders v. John Nuveen & Co., Inc.,* 554 F.2d 790, 793 (7th Cir.1977). The

majority of circuit courts followed suit. *See Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1568–69 (9th Cir.1990) ("Our circuit . . . along with ten other circuits, has held that recklessness may satisfy the element of scienter in a civil action for damages under § 10(b) and Rule 10b–5").

In 1994, the Supreme Court held that a private plaintiff may not maintain an aiding and abetting suit under § 10(b). *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In its opinion, the Court emphasized the importance of adherence to statutory language. *See id.* at 173, 114 S.Ct. 1439 ("the private plaintiff may not bring a 10b–5 suit against a defendant for acts not prohibited by the text of § 10(b)") *and* 177 ("It is inconsistent with settled methodology in § 10(b) cases to extend liability beyond the scope of conduct prohibited by the statutory text"). In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended the Securities Exchange Act of 1934 to include the more rigorous pleading standard for scienter in 15 U.S.C. § 78u–4(b)(2).

Defendants argue that the passage of the PSLRA and the Supreme Court's "cautionary" language in *Central Bank,* quoted above, requires reconsideration of the Seventh Circuit's holding in *Sanders.* This court disagrees. As defendants recognize, the Supreme Court has never addressed whether recklessness is sufficient for liability under § 10(b). In *Central Bank,* the Court prohibited private aiding and abetting suits under § 10(b) because the statutory text did not support the imposition of such liability; it did not alter the scienter requirement for § 10(b) claims.

Congress did not alter the scienter requirement, either. The PSLRA imposes a heightened pleading standard on plaintiffs; a plaintiff must now "state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). The PSLRA, however, does not contain a specific scienter requirement for

§ 10(b) fraud claims. On the contrary, the PSLRA refers only to the "required state of mind." 15 U.S.C. § 78u–4(b)(2).

Some courts, relying on the legislative history of the PSLRA, have concluded that Congress rejected recklessness as a basis for § 10(b) liability. *See, e.g., Voit v. Wonderware Corp.,* 977 F.Supp. 363, 373–74 (E.D.Pa. 1997); *Norwood Venture Corp. v. Converse, Inc.,* 959 F.Supp. 205, 208–09 (S.D.N.Y.1997); *Friedberg v. Discreet Logic, Inc.,* 959 F.Supp. 42, 47–51 (D.Mass.1997). The legislative history, however, is consistent with this court's conclusion that Congress left the determination of the appropriate scienter requirement to the courts, while strengthening the pleading standard applicable to that scienter requirement. *See In re Health Management, Inc. Securities Litig.,* 970 F.Supp. 192, 201 (E.D.N.Y.1997) ("The only requirement imposed by Congress pursuant to the PSLRA in pleading scienter is that a plaintiff plead facts giving rise to a 'strong inference' of fraudulent intent"); *In re Baesa Securities Litig.,* 969 F.Supp. 238, 242 (S.D.N.Y.1997) ("the Reform Act ... does nothing to disturb the substantive law of what is the required mental state for a securities fraud violation, it ... alter[s] what is required to plead the requisite scienter"). This court's conclusion that recklessness is sufficient under § 10(b) is also consistent with every other opinion addressing the issue in this district. *See Gilford Partners, L.P. v. Sensormatic Electronics Corp.,* 1997 WL 757495, at *18 (N.D.Ill. Nov.24, 1997); *Galaxy Inv. Fund, Ltd. v. Fenchurch Capital Management, Ltd.,* 1997 U.S. Dist. LEXIS 13207, at *35–38 (N.D.Ill. Aug. 29, 1997); *Fugman v. Aprogenex, Inc.,* 961 F.Supp. 1190, 1195 (N.D.Ill.1997); *Rehm v. Eagle Fin. Corp.,* 954 F.Supp. 1246, 1250–53 (N.D.Ill.1997). The court, therefore, rejects defendants' argument that the Seventh Circuit's holding in *Sanders* has been effectively superseded by the PSLRA.

 Defendants next argue that plaintiff's allegations do not support a strong inference that they were reckless, assuming that is an appropriate state of mind under § 10(b). In the second amended complaint, plaintiff alleges the following facts. Near the end of fiscal year 1995, Robert Sutton ("Sutton"), a controller employed by Material Sciences, began to artificially inflate the value of Material Sciences inventory by inserting fictional numbers into the company's General Ledger. By overstating the value of inventory, Sutton achieved an understatement of the cost of goods, which created a paper increase in profits. Sutton also entered fictional, unreasonably low numbers in the General Ledger for accounts payable. Sutton's activities resulted in artificially inflated earnings figures for Material Sciences' principal operation, Laminates and Composites.

On various occasions, which plaintiff has specifically described in her complaint, defendants publicly reported Material Sciences' sales and earnings using these artificially inflated figures. Defendants also stated in several reports, for which "senior management [was] responsible," that Material Sciences' "system of internal accounting controls provides reasonable assurance that ... material errors are prevented or detected within a timely period, and that records are sufficient to produce reliable financial reports." The inaccurate financial reports and statements artificially inflated the market price of Material Sciences' common stock, owned by individuals such as plaintiff. On April 7, 1997, Material Sciences announced that it had discovered "accounting irregularities." Material Sciences also announced that the release of its financial results for fiscal year 1997 would be delayed, and that past reports would be revised. These announcements caused the price of Material Sciences common stock to drop, injuring plaintiff and other stockholders.

Plaintiff alleges that defendants were exposed to substantial evidence of Sutton's fraudulent activity. According to the second amended complaint, for example, Sutton did not total his manual adjustments to monthly inventory reports. Totals from these reports were supposed to correspond to figures in the General Ledger, but did not. Moreover, inventory quality statements, which were generated and provided to senior management at Material Sciences on at least a monthly basis, showed a rapid and unexplained increase in the cost per pound of

carried inventory. This rapid and unexplained increase—which plaintiff claims is a classic "red flag" of fraud—was also discussed in written and oral presentations as a part of quarterly business reviews.

The Journal Book, which is attached to the General Ledger each month, also evidenced fraudulent activity. The Journal Book contains a detailed entry for each account payable, listing information such as the receiving report or invoice number supporting the obligation, the vendor name, the dollar amount, and the account from which the payable was accrued. The false entries in the Journal Book consisted only of dollar amounts and did not include any of the detailed information required in a legitimate journal entry. Meanwhile, the increasing value of inventory on hand, the increasing costs per pound of carried inventory, and the declining inventory turns and the apparent concomitant drop in cash flows at Laminates and Composites were detailed in multiple financial documents provided to Material Sciences and were the cause of repeated discussions at quarterly business reviews over the course of fiscal year 1997. Plaintiff alleges that this evidence either demonstrated that fraud was taking place or, at the very least, should have promoted some investigation into the accuracy of the information Sutton was providing. Because Sutton's manipulation of the books was obvious, plaintiff claims that even the most cursory review of the books would have led to the discovery of the fraud. Plaintiff alleges that defendants intentionally or recklessly disregarded this evidence of financial irregularities.

Plaintiff alleges that Material Sciences employed virtually no internal audit procedures while Sutton's manipulation of the books was taking place, despite defendants' statements to the contrary. Although Material Sciences did hire outside consultants to perform internal audit functions, plaintiff alleges that no audit or investigation of Sutton's division was conducted in fiscal year 1996, and that defendants procured an inadequate audit in fiscal year 1997. Plaintiff also alleges that defendants' failure to either employ adequate internal procedures, investigate the possibility of fraud, or verify the accuracy of the information they were using was even more egregious in light of the fact that Material Sciences had recently experienced a similar incident of inflated inventory reports. According to plaintiff, a controller at one of Material Sciences' other divisions had been posting returned or defective inventory at full value, resulting in an overstatement of earnings. Plaintiff also claims that defendants' behavior was particularly reckless in light of Sutton's poor performance reviews, which highlighted his lack of financial control skills.

Defendants argue that plaintiff's allegations show that Sutton acted alone and that defendants did not become aware of his activity until he told them about it in late March 1997. The court, however, is not required to accept defendants' characterization of the alleged facts. On the contrary, the court is required to draw all reasonable inferences in favor of the plaintiff when considering a motion to dismiss. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996). Drawing all reasonable inferences in her favor, plaintiff has, in essence, alleged that: (1) Sutton was cooking the books over an extended period of time and making no effort to conceal his misconduct; (2) defendants knew of Sutton's misconduct or consciously and recklessly disregarded it in order to inflate Material Sciences' earnings and stock value, as well as their own wealth; and (3) defendants intentionally misrepresented the integrity of the financial statements and their own confidence therein. Although these allegations, along with the voluminous factual detail set forth in the complaint, may be difficult to prove, the court finds that plaintiff has stated a claim under § 10(b) sufficient to withstand the instant Rule 12(b)(6) motion. Plaintiff has alleged specific facts which give rise to a strong inference that defendants recklessly ignored various warning signs, such that their financial reports and other statements could be characterized as fraudulent. Deliberately ignoring "red flags" such as those alleged here can constitute the sort of recklessness necessary to support § 10(b) liability. *See, e.g., In re Health Management, Inc. Securities Litig.,* 970 F.Supp. 192, 202–04 (E.D.N.Y.1997); *In re Kidder Peabody Secu-*

*rities Litig.,* 1995 WL 590624, at \*8 (S.D.N.Y. Oct.4, 1995); *In re Leslie Fay Companies, Inc. Securities Litig.,* 871 F.Supp. 686, 698–99 (S.D.N.Y.1995); *In re Leslie Fay Companies, Inc. Securities Litig.,* 1993 WL 438927, at \*4 (S.D.N.Y. Oct.27, 1993); *CMNY Capital, L.P. v. Deloitte & Touche,* 821 F.Supp. 152, 165–66 (S.D.N.Y.1993). Plaintiff has therefore met the heightened pleading requirement of 15 U.S.C. § 78u–4(b)(2), and Count I states a claim for fraud in violation of § 10(b). Because Count I states a claim for a primary violation, plaintiff may assert a claim for fraud under § 20(a) in Count II.

## CONCLUSION

Defendants' motion to dismiss the second amended complaint is denied.