The INDIANA NATIONAL BANK, Merchants National Bank & Trust Company of Indianapolis

v.

MOBIL OIL CORPORATION.

No. IP. 75–195–C.

United States District Court, S. D. Indiana, Indianapolis Division.

Oct. 13, 1977.

Jerry P. Belknap and Claudia V. Swhier of Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for plaintiffs.

Theodore R. Boehm and Joseph C. Emerson of Baker & Daniels, Indianapolis, Ind., for defendant.

## MEMORANDUM OF OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOLAND, District Judge.

## MEMORANDUM OPINION

This action arises from a cash tender offer which defendant Mobil Oil Corporation ("Mobil") made in August of 1974 for

the securities (common and preferred stock) of Marcor, Inc. ("Marcor"). The plaintiffs, The Indiana National Bank ("INB") and Merchants National Bank & Trust Company of Indianapolis ("Merchants"), are national commercial banks located in Indianapolis, Indiana, who attempted to tender Marcor securities on behalf of their customers and trust accounts.

Plaintiffs were eligible to and did exercise the delayed delivery option contained in the Mobil offer. It is conceded that plaintiffs satisfied the first phase of the delayed delivery option by delivering proper Letters of Transmittal during the offer period. The dispute is over the second phase which required plaintiffs to deliver the stock certificates in accordance with their guarantees by the close of the eighth business day after Mobil publicly announced the number of shares it would purchase.

Plaintiffs contend that Mobil failed to make the required public announcement. They also maintain that the tender offer omits material information concerning how the "public announcement" would be made in violation of § 14(e) of the Securities Exchange Act of 1934 ("Act"). Finally, they contend that by virtue of their completion of the first phase they are entitled to have their tendered securities purchased pro rata under the provisions of § 14(d)(6) of the Act. On the other hand, Mobil has denied any breach of contract and steadfastly maintained that neither provision of the Act has any application to the instant controversy. In addition, Mobil raised several affirmative defenses.

## WILLIAMS ACT CLAIMS

▪ The Williams Act of 1968 amended the Securities and Exchange Act of 1934 ("Act") to include sections 14(d)(6) and 14(e). The design and purpose of the Williams Act is to protect the shareholder of a target corporation who is confronted by a cash tender offer. *Rondeau v. Masinee Paper Corporation*, 422 U.S. 49, 58, 95 S.Ct. 2069, 2075–2076, 45 L.Ed.2d 12 (1975); *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 22–23, 35, 97 S.Ct. 926, 940, 946, 51 L.Ed.2d

124 (1977); *Smallwood v. Pearl Brewing Company*, 489 F.2d 579, 597, 598 (5th Cir. 1974). This purpose is accomplished by disclosure requirements designed to provide the shareholder with the information necessary for his investment decision. Other provisions of the Williams Act benefit the tendering shareholder by giving him a limited right to withdraw his tendered securities, § 14(d)(5), a right to pro rata purchase of his tendered securities when the offer is oversubscribed, § 14(d)(6), and a right to increased consideration if such is given to other tenderors, § 14(d)(7). *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 23, 97 S.Ct. 926, 940, 51 L.Ed.2d 124 (1977). In addition, "the Williams Act also contains a broad antifraud prohibition . . . Section 14(e) of the Act, 15 U.S.C. § 78n(e) . . ." *Id.*, 430 U.S. 24, 97 S.Ct. 940. The Williams Act does not, however, explicitly provide a private cause of action for redress of alleged violations. *Id*, 430 U.S. 24, 97 S.Ct. 941. And while it is generally accepted that there is an implied private right of action under § 14(e), *see Smallwood v. Pearl Brewing Company, supra*, at 596, n.20, it is a question of first impression with regard to the § 14(d)(6) claim. The Court, however, shall not reach that issue because, assuming that an implied private action exists, plaintiffs have failed to establish their claim.

▪ The Court finds little, if any, substance in the § 14(d)(6) claims. First, it is conceded that Mobil purchased those tendered shares which Mobil determined to be properly tendered on a pro rata basis with adjustments to avoid fractions. The dispute is not whether Mobil complied with the general requirements of § 14(d)(6), but rather it is whether the securities which plaintiffs attempted to tender were properly tendered and thus within the class of "deposited" securities entitled to equal treatment under the oversubscription provisions of § 14(d)(6). Second, § 14(d)(6) was enacted to remove the pressures of the first-come, first-purchased practices. *Piper v. Chris-Craft Industries, Inc., supra*, 430 U.S. 1, 23, 97 S.Ct. 926, 940, 51 L.Ed.2d 124.

This was accomplished by establishing a minimum ten day offer period and requiring that all proper tenders during that period, or any extension thereof, be treated equally with regard to consideration, § 14(d)(7), and with regard to the offeror's duty to purchase pro rata if the offer became oversubscribed. The first-come, first-purchased dilemma is not present here. Third, there is no evidence of any Congressional intent to legislate what is a proper tender. A tender is proper if it meets the requirements of the tender offer, and not otherwise. And finally, it is the Court's opinion that "deposited", as used in § 14(d)(6), is equivalent to "properly tendered". Thus, a tenderor is entitled to have his securities purchased pro rata if, and only if, his tender has met the conditions of the tender offer. Here plaintiffs failed to meet those conditions when they failed to deliver the Marcor certificates by the close of business on September 6, 1974.

■ The Court also finds little, if any, substance in the § 14(e) claims asserted by the plaintiffs. The purpose of § 14(e) is to assure full and fair disclosure of material information concerning the offeror to the target shareholder. *See Piper v. Chris-Craft Industries, Inc., supra; Bath Industries, Inc. v. Blot*, 427 F.2d 97, 109 (7th Cir. 1970); *Lowenschuss v. Kane*, 520 F.2d 255, 268 (2nd Cir. 1975). Since the purpose of the Williams Act is to assure an informed investment decision, the test for materiality is whether a reasonable investor might have considered the information important in making his investment decision whether to tender or hold his securities. *Sonesta International Hotels Corporation v. Wellington Associates*, 483 F.2d 247, 251 (2nd Cir. 1973); *Missouri Portland Cement Company v. H.K. Porter Company, Inc.*, 535 F.2d 388, 393 (8th Cir. 1976); *General Host Corporation v. Triumph American, Inc.*, 359 F.Supp. 749, 753 (S.D.N.Y. 1973); *Texasgulf, Inc. v. Canada Development Corporation*, 366 F.Supp. 374, 421 (S.D. Tex. 1973). Thus, Mobil may be held liable under § 14(e) if, and only if, the tender offer omitted or misstated facts which a reasonable investor would consider important in making his investment decision.

■ Plaintiffs make only one complaint about the tender offer. They complain that Mobil failed to state how the "public announcement" would be made to trigger their delivery guarantees. They make no complaint about the disclosures of information which would affect the investment decision itself. Instead, they complain that the offer failed to clearly specify the mechanics of making a tender, i. e., how to effectuate the investment decision once it has been made. It is the opinion of the Court that this complaint, even if true, does not raise a § 14(e) claim. The nature of the alleged omission or misstatement indicates that it is not one of the evils to which § 14(e) was directed. Therefore, there is no materiality.

■ In addition to the lack of materiality, plaintiffs have presented no evidence of scienter. Since § 14(e) is the counterpart of § 10(b) of the Act and Rule 10b–5 of the Securities and Exchange Commission, it is reasonable to conclude that the scienter requirement of Rule 10b–5, which was recently clarified by *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), is also applicable to actions under § 14(e). *See, Smallwood v. Pearl Brewing Company, supra*, 489 F.2d, at 606; *Electronic Specialty Co. v. International Controls Corp.*, 295 F.Supp. 1063, 1077 (S.D.N.Y. 1963), *aff'd in part, rev'd in part*, 409 F.2d 937 (2nd Cir. 1969). The scienter requirement necessitates evidence of "intentional or willful conduct designed to deceive or defraud investors . . . ", *Ernst & Ernst v. Hochfelder, supra*, 425 U.S. at 199, 96 S.Ct. at 1384, or of "reckless behavior". *Bailey v. Meister Brau, Inc.*, 535 F.2d 982 (7th Cir. 1976); *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir. 1977); *Sanders v. John Nuveen & Co. Inc.*, 554 F.2d 790 (7th Cir. 1977). In *Sanders* the Seventh Circuit noted:

We believe 'reckless' in these circumstances comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence. We perceive it to be not just a difference in degree, but also in kind. *Id.*, at 793.

■ Plaintiffs presented no evidence of intent, motive or purpose to deceive or defraud. Plaintiffs do not allege that the failure to specify how the public announcement would be made constituted "an extreme departure from the standards of ordinary care" or was "so obvious that [Mobil] must have been aware of it." *Sanders, supra,* at 793. And, plaintiffs concede Mobil's good faith. Thus, plaintiffs have simply failed to establish the scienter requirement.

■ Finally, it is the Court's opinion that Mobil's failure to state how it would make a public announcement was not even an omission or misstatement. Mobil has cited to this Court numerous authorities which indicate that the phrase "public announcement" has a generally accepted meaning in the securities field. This generally accepted meaning equates "public announcement" with a press release. For example, Reg. 240.14e–2 promulgated by the Securities and Exchange Commission makes it a violation of § 14(e) for the tender offeror to extend the offer period unless he issues "a press release or other public announcement" within one business day after the original period expired. Another example is found in the New York Stock Exchange's (NYSE) Company Manual at pages A–22—A–24 where the press release is designated as the normal method to disseminate important corporate news and where the distribution of said release to Dow Jones, Reuters, Associated Press and United Press International is deemed to insure adequate coverage of important news which requires immediate publicity. The press release was also equated with a public announcement by the Second Circuit in *Chris-Craft Industries, Inc. v. Piper,* 480 F.2d 341, 351 (2nd Cir. 1973). Plaintiffs are "Eligible Institutions" who are paid to perform investment services for customers and trust accounts. As such they are expected to be sophisticated. It was therefore reasonable for Mobil to use the phrase "public announcement" to describe the event which would trigger the delivery guarantees made by "Eligible Institutions" such as INB and Merchants. Section 14(e) does not require

the offeror to define each and every term or phrase used in the tender offer. This is particularly true where the phrase has a popular meaning in the securities business and where only sophisticated investors such as national commercial banks are expected to comprehend its meaning. In short, the Court finds the phrase "public announcement" to be self-explanatory. Therefore, the absence of further explanation does not constitute an omission or misstatement of fact.

## CONTRACT CLAIM

■ The final claim asserted by plaintiffs is premised upon the tender offer itself. Although this claim pursues several argumentative courses, it may be resolved by one determination—whether the press release issued by Mobil on August 26, 1974, constituted the public announcement that Mobil agreed to provide to those eligible institutions such as INB and Merchants who used the delayed delivery procedures authorized by paragraph 4 of the tender offer. Under the terms of the offer Mobil agreed to pay for those Marcor securities which were deposited "no later than eight business days after *public announcement* by Mobil *that a specified number of Shares will be purchased* under this Offer if all of the terms and conditions of this Offer are satisfied." (Court's emphasis). If the August 26 press release was the public announcement, then neither plaintiff is entitled to payment. If the August 26 press release was not the public announcement, then plaintiffs are entitled to the recovery they seek. The full text of Mobil's press release may be found in Finding of Fact 9.

The press release states that "Mobil will purchase a total of 17,250,000 shares." It also contains a paragraph which advises that "Institutions that have guaranteed delivery of certificates for shares must deliver . . . on or before Sept. 6, 1974." Plaintiffs concede, as they must, that the contents of this press release satisfy Mobil's obligation under the tender offer. Plaintiffs argue, however, that they were enti-

tled to notice as distinguished from a press release or public announcement. They attempted to establish that notice of the delivery deadline was an industry custom. This attempt failed. The evidence revealed that each tender offer is a thing unto itself. The offeror has tremendous latitude bounded only by the parameters of the Williams Act amendments of 1968. Here Mobil undertook to give a public announcement and that is what Mobil did on the morning of August 26, 1974. Therefore, Mobil did not breach its agreement with those "Eligible Institutions" such as INB and Merchants who had conditionally tendered Marcor securities.

INB has raised two other claims. First, INB alleges that an employee, Mr. Beckner, telephoned the Depositary on September 6, 1974, during business hours. Mr. Beckner had no independent recollection of the date at trial, but, relying upon a report he made in conjunction with Mr. Russell, Beckner testified that he made the call on September 6 at such a time that the certificates could have been delivered to the Depositary in Chicago, Illinois, before the close of business. Beckner testified that the Depositary advised him that the deadline for delivery of the certificates had expired. Mr. Russell, who is also employed by INB, concurs in Beckner's testimony. Russell relies upon the same report as Beckner and also upon the actual deposit of certificates on September 18, 1974. Russell testified that he called Mobil on the same date as Beckner's call and that Mobil stated that the deadline had expired and called Russell's attention to the press release and corresponding news coverage. Russell also talked with Mr. Kumler, who is employed by INB, on that same day. Kumler, however, believes the date was September 13, 1974. His belief is seconded by Mr. Keeling who was in charge of INB's trust department. Kumler and Keeling place the date at September 13, 1974, by reference to the series of meetings they had concerning the failure to deliver the Marcor certificates by the September 6 deadline.

It is the Court's finding that the series of telephone calls were made on September 13,

1974. The circumstances point only to that date. First, there was no reason for Mobil or the Depositary to state the deadline had expired if it had not actually expired. Second, Mobil gave the public announcement on August 26, 1974, which was the first possible date to give such after the expiration of the offer period. Thus, September 6 represented the first possible deadline for delivery of certificates under the guarantees. If the telephone calls were made on that date, Russell, Beckner or Kumler would have known that delivery could still be made. Their review of the tender offer terms would have alerted them to the alleged misinformation given by Mobil and the Depositary. As reasonable men, they would have attempted a delivery of certificates on that day, not twelve days later on September 18, 1974. And finally, the Court finds the testimony of Kumler and Keeling to be more credible and reliable. Accordingly, INB cannot recover under this theory.

INB's second claim is that Mobil through its agent, the Depositary, waived the delivery deadline by accepting possession of the certificates and issuing a receipt for the same on September 18, 1974. The Court finds no merit to this contention. The Depositary merely gave written evidence that INB had delivered the certificates. There was no indication that the deadline was being ignored. In fact, the certificates were returned several days later with a letter of rejection. INB could not in good faith rely upon the receipt as a waiver after it had twice been told that the delivery deadline had expired. There was no evidence of an intentional relinquishment of a known right, see *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), which would constitute a waiver of the delivery deadline. Therefore, INB cannot recover under its waiver theory.

Plaintiffs, in effect, have requested the Court to compensate them for their losses for the sole reason that notice may have been a better method than a public an-

nouncement. Plaintiffs urge that the number of failures in delivery guarantees support their position. The Court, however, cannot rewrite the tender offer through the guise of construing the offer. Mobil, aware that its offer price would probably evoke a substantial oversubscription and under pressure from the N.Y.S.E. and S.E.C. to promptly return unpurchased securities, elected to employ the public announcement mechanism to trigger deliveries. In this regard, Mobil, who was confronted with the unprecedented task of handling the 39,000 separate tenders, shifted some of the burden to eligible institutions in exchange for a commission fee. Whether or not individual notice or some other method would provide a better trigger is not the issue. The issue is whether a public announcement was an acceptable practice. Under the circumstances, this Court must conclude that the use of a public announcement to trigger delayed deliveries is and was an acceptable practice.

██ It is therefore the Court's conclusion that the plaintiffs, INB and Merchants, are not entitled to recover upon any of the theories presented to the Court. The Court has found no substance in the security law claims and has found that Mobil complied with the spirit and letter of its offer. Plaintiffs had a contractual right to a public announcement, not to individual notice. Mobil issued the press release which constituted the public announcement. For various reasons, which are more particularly known by employees of INB and Merchants, the plaintiffs simply failed to read and comprehend the announcement. Therefore, they must suffer the loss. Having so found, the Court finds it unnecessary to rule upon or discuss the defenses raised by Mobil.

In connection therewith, and in accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court hereby makes the Findings of Fact and Conclusions of Law which follow:

## FINDINGS OF FACT

1. Plaintiffs, The Indiana National Bank ("INB") and Merchants National Bank & Trust Company of Indianapolis ("Merchants"), are national commercial banking associations located and doing business in Indianapolis, Marion County, Indiana.

2. Defendant Mobil Oil Corporation ("Mobil") is a New York corporation with its principal place of business in the State of New York.

3. The action is based upon claims asserted under § 14(d)(6) and § 14(e) of the Securities Exchange Act, 15 U.S.C. §§ 78n(d) and 78n(e), arising out of a cash tender offer in August 1974, by Mobil for certain issued and outstanding securities of Marcor, Inc. ("Marcor"), and upon a claim for breach of contract arising out of said tender offer.

4. On August 12, 1974, Mobil mailed a copy of the tender offer to Marcor shareholders of record and on August 13, 1974, Mobil published the tender offer in The Wall Street Journal, The Chicago Tribune, and the Financial Times of London. Under the terms of the offer, one share of Marcor preferred stock was equivalent to two shares of Marcor common stock. Mobil offered to purchase at least 17,250,000 shares at $35 per share (or $70 per share of Marcor preferred stock). If the offer was oversubscribed, Mobil agreed to purchase the tendered shares on a *pro rata* basis with some adjustments to avoid fractions.

5. The tender offer commenced August 13, 1974, and expired at 5:00 o'clock P.M. on August 23, 1974. Under the terms of the offer, Marcor shareholders could tender their shares by one of three specified procedures. INB and Merchants, as "Eligible Institutions", followed the guarantee of delivery procedure authorized and controlled by paragraph 4 of the offer which read:

> Tenders may be made without the concurrent deposit of stock certificates if such tenders are made by or through a firm which is a member of a registered national securities exchange or of the NASD or by or through a commercial bank or trust company in the United States ('Eligible Institution'). In such

cases a properly completed and executed Letter of Transmittal must be received by the Depositary or a Forwarding Agent prior to the expiration of this Offer and the guarantee of delivery contained in the Letter of Transmittal must have been executed by an Eligible Institution. Payment for Shares so tendered and purchased will be made only against the deposit with the Depositary of the certificates and any other documents required by the Letter of Transmittal no later than eight business days after public announcement by Mobil that a specified number of Shares will be purchased under this Offer if all of the terms and conditions of this Offer are satisfied.

6. On or before August 22, 1974, INB delivered to the Depositary Letters of Transmittal with the delivery guarantees covering 3000 common and 26,084 preferred shares of Marcor stock. These letters and their guarantees were properly completed and executed.

7. On or before August 22, 1974, Merchants delivered to the Depositary a Letter of Transmittal with a delivery guarantee covering 1000 shares of Marcor common stock. The letter and the guarantee were properly completed and executed.

8. At the close of the offer period the Marcor shareholders, through some 39,000 separate transactions, had tendered 3,824,438 preferred and 26,143,115 common shares, or roughly 90% of the publicly owned Marcor shares. This represented a substantial oversubscription. As a result of this, the trading in Marcor securities was suspended on August 26, 1974, by the New York Stock Exchange. When trading resumed on August 27, 1974, the price of Marcor common stock declined sharply ($7.375 per share) to close at $18.75 per share. This sharp decline in price would indicate to a sophisticated investor that a significant event had occurred regarding Marcor stock.

9. On August 26, 1974, Mobil delivered to the Dow Jones Wire Service a press release and on the same day delivered or telephoned such release to Reuters, Platts Oilgram, the Oil and Gas Journal, Petroleum Intelligence Weekly, and PR Newswire, a press service, which distributed the release to wire services, radio and television networks and major newspapers. Such press release was as follows:

MOBIL TENDER OFFER FOR MARCOR OVERSUBSCRIBED

Mobil Oil Corporation announced today that its offer to purchase shares of common stock and convertible cumulative preferred stock, Series A, of Marcor Inc. had been oversubscribed and will not be extended.

A preliminary count shows that as of 5:00 P.M. E.D.T. on Aug. 23, 1974, approximately 24.6 million shares of common stock and approximately 4.3 million shares of preferred stock had been tendered. The majority of these tenders is still in the process of review to confirm their compliance with technical requirements.

Subject to the terms and conditions of the offer, Mobil will purchase a total of 17,250,000 shares, counting each share of common stock as one share and each share of preferred stock as two shares. Based on the preliminary count, approximately 52 percent of the tendered shares will be purchased on a pro-rata basis if the terms and conditions of the offer are met.

Institutions that have guaranteed delivery of certificates for shares must deliver all guaranteed shares to the depositary, Continental Illinois National Bank and Trust Company of Chicago, on or before Sept. 6, 1974. Certificates representing the balance of the tendered shares, including those guaranteed, will be returned as soon as practicable after Sept. 6, 1974.

Mobil's purchase of shares pursuant to the offer remains conditional upon Marcor's disposing of its controlling interest in a bank prior to October 11, 1974. Mo-

bil will, concurrently with the purchase of shares pursuant to the offer, purchase for $200,000,000 eight million shares of a new Series B voting preferred stock directly from Marcor. Marcor's management supported the offer and is cooperating in disposing of its interest in the bank and in completing Mobil's purchase of the new preferred stock.

The press release was published verbatim on the Dow Jones broad tape on August 26, 1974.

10. The corresponding news article with information contained in such release which was published in The Wall Street Journal on August 27, 1974, read:

Mobil Oil Corp. said its cash tender offer to acquire control of Marcor Inc. has been oversubscribed and won't be extended.

As a result of the healthy premiums that Mobil offered for Marcor common and Series A convertible preferred stock, Marcor's shareholders tendered almost twice as many shares as Mobil needs to gain control of the Chicago-based retailing and paperboard packaging concern.

Mobil said about 24.6 million of Marcor's 29 million common shares outstanding and about 4.3 million of its six million Series A preferred shares were tendered. The common carries one vote a share and the preferred shares have two votes each, thereby giving Mobil 33.2 million votes. When it made its offer earlier this month, Mobil said it would purchase a total of 17,250,000 Marcor votes.

Thus, Mobil said yesterday it will take up about 52% of the tendered shares on a pro rata basis, paying $35 a share for the common and $70 a share for the preferred.

News articles with some of the information contained in such press release were also published in Indianapolis newspapers, but none included the material in the fourth paragraph of the release.

11. On August 30, 1974, Moody's Industrial Manual Supplement under "Mobil Oil Corp." reported that:

Co. said its offer to purchase . . . has been over subscribed and will not be extended . . . . Co. will purchase 17,250,000 shs.

12. On September 5, 1974, Mobil issued another press release to the Dow Jones wire service. This release appeared on the Dow Jones broad tape on the same day. It stated, among other things, that the Marcor stock certificates for which delivery had been guaranteed must be in the hands of the Depositary by the close of business on September 6, 1974, and reported "widespread misunderstanding on the part of commercial banks, trust companies, brokers, and dealers" as to this matter.

13. Neither INB nor Merchants subscribed to the Dow Jones Wire Service at any time here pertinent. Except for banks located in money centers, only about half of the commercial banks and trust companies in the United States subscribe to that service. INB did subscribe to Moody's Industrial Manual and The Wall Street Journal.

14. INB and Merchants did not read or, if they did read, did not comprehend the significance of the news articles carried by The Wall Street Journal on August 27, 1974, or Moody's Industrial Manual Supplement on August 30, 1974. INB was looking for a paid advertisement or individual notice. Merchants was not looking at all. On September 13, 1974, INB personnel telephoned the Depositary and Mobil. INB was then advised that the deadline for delivery had passed. After several meetings INB personnel decided to make a late tender of the stock certificates.

15. On September 18, 1974, INB delivered to the Depositary certificates of Marcor Stock for all shares covered by the Letters of Transmittal theretofore delivered by it to the Depositary pursuant to the Tender Offer. Such certificates were received by a window clerk of the Depositary and receipts were issued to INB for the

same. Such receipts stated, immediately above the authorized signature:

Check and/or securities will be:

[x] Mailed  [ ] Held for window delivery.

Thereafter on September 20, 1974, such certificates were returned to INB with a letter and transmittal form from the Depositary. Such letter read as follows:

Thank you for your letter of September 18, 1974 regarding your guaranteed tender of 29,984 shares of Marcor stock. In accordance with Mobil Oil Corporation's "Offer to Tender" booklet, paragraph 4, on page 3, states the stock certificates must be received by the Depository within eight business days after the date of such telegram or guarantee.

We regret that we cannot now accept your tender.

The provision referred to is the "protect" provision. INB had not made tenders under that provision.

16. On some date after September 6, 1974, Merchants offered to deliver to the Depositary certificates for the shares of Marcor Stock covered by the Letter of Transmittal delivered by it pursuant to the Tender Offer, but it was instructed by the Depository not to make such delivery because the time for delivery had expired.

17. Nine hundred sixty-seven Eligible Institutions made tenders without the concurrent deposit of stock certificates by executing guarantees of delivery in the Letters of Transmittal or by the "protect" procedure of the Tender Offer. Five hundred fifty-seven such Eligible Institutions were commercial banks or trust companies. Two hundred sixty-eight of those Eligible Institutions failed to deliver the stock certificates by September 6, 1974. These failures involved over 10% of the Marcor Stock tendered by delivery guarantees.

18. On September 9, 1974, Mobil announced it would purchase, pro rata, 51.86% of the shares properly tendered. On September 24, 1974, Mobil delivered to the Depositary formal notice of its election to purchase the tendered Marcor stock. Mobil's payment for shares purchased pursuant to the Tender Offer and the return of certifi-

cates for the unpurchased shares were completed in October 1974.

19. On or about October 4, 1974, INB purchased from its customers' accounts, at the full Tender Offer price, the shares of Marcor Stock tendered by it for them which Mobil had refused to purchase. Its purchase involved 1,555 shares of Marcor Common Stock and 13,530 shares of Marcor Preferred Stock, being 51.86% of the total shares tendered with appropriate adjustments to avoid fractional shares. The total dollar amount paid for such shares aggregated $1,001,525.00.

20. Merchants settled the claim made by its customer for damages based upon the 1000 shares of Marcor common stock tendered on or before August 22, 1974, but not delivered by the close of business on September 6, 1974. Merchants is therefore the assignee of such rights as its customer may have had against Mobil.

21. Most Tender Offers contain some provision for delayed delivery by guarantee. However, in the securities field there is no custom regarding what event should trigger the obligation to deliver stock certificates pursuant to such guarantee. In some instances the delayed delivery period has been automatically triggered by the expiration of the offer, the date of the guarantee or some other event. In other instances the offeror has agreed to give some form of notice to trigger the delivery obligation. The practice has been that the terms of the particular offer govern.

22. The use of a public announcement to trigger delivery obligations pursuant to guarantees was not material to the shareholder's investment decision of whether to hold or sell his Marcor stock. The phrase "public announcement" is self-explanatory. Failure to specify how a "public announcement" will be made is not misleading or an omission.

23. Mobil agreed in paragraph 4 of its offer to give "Eligible Institutions" such as INB and Merchants a "public announcement . . . that a specified number of Shares will be purchased under this Offer if all the terms and conditions of this Offer

are satisfied." The press release of August 26, 1974, was a "public announcement" of its contents as that phrase is commonly understood and used in the securities business. The contents of that August 26 press release specified the number of shares Mobil would purchase subject to the other conditions of the Offer. Eligible Institutions, such as INB and Merchants, who had used the delayed delivery tender procedure had eight business days or until the close of business on September 6, 1974, to actually deliver the Marcor stock certificates.

24. The news article published by The Wall Street Journal on August 27, 1974, specified the number of shares Mobil would purchase.

25. The issuance of a receipt on September 18, 1974, for the stock certificates delivered by INB on said date was not a relinquishment of Mobil's right to reject improper tenders. Mobil properly rejected INB's attempt to tender the Marcor securities after the deadline.

26. There is no evidence of any material misstatement or omission in the Tender Offer made by Mobil in August 1974.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and the subject matter of this action.

2. In accordance with the terms of its offer, Mobil on August 26, 1974, made a public announcement of the specific number of shares it would purchase subject to the other conditions of its offer. Under the terms of the offer, INB and Merchants had until the close of business on September 6, 1974, to complete delivery of the Marcor stock certificates. INB and Mobil failed to deliver before the deadline. Therefore, INB and Merchants are not entitled to recover anything under their breach of contract claims.

3. The issuance of a receipt by the Depositary to INB on September 18, 1974, did not constitute a waiver by Mobil of its right to reject INB's tardy, and thus improper, delivery of the Marcor stock certificates.

4. The failure of the Tender Offer to state how the public announcement would be made did not constitute a material omission or misstatement of fact, nor was such failure material to the investment decision of a Marcor shareholder. Accordingly, INB and Merchants are not entitled to recover under their claim that Mobil violated § 14(e) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(e).

5. Mobil purchased properly tendered Marcor stock certificates on a *pro rata* basis with some adjustments to avoid fractions. Therefore, INB and Merchants are not entitled to recover under their claim that Mobil violated § 14(d) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(d).

6. Mobil is entitled to judgment in its favor on each of the three claims made by INB and Merchants. Accordingly, INB and Merchants shall take nothing from Mobil by way of their complaint herein.