**In re BAESA SECURITIES LITIGATION.**

**WESTERN HEART INSTITUTE, P.C., Ali B. Manguoglu, M.D., P.A., Perrine Electric Co., and Pearl Bence Lowy, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BUENOS AIRES EMBOTELLADORA S.A., Pepsico Inc., and Charles H. Beach, Defendants.**

**JOREL INVESTMENT CORP., Long Beach Pediatric Surgery Associates, Arturo Santos, M.D., Inc., and Sajid & Zenaida Chughtai M.D., Inc., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BUENOS AIRES EMBOTELLADORA S.A., Pepsico Inc., and Charles H. Beach, Defendants.**

Nos. 96 Civ. 7435 (JSR), 96 Civ. 8141 (JSR).

United States District Court, S.D. New York.

July 9, 1997.

Wolf Popper L.L.P. by Stephen Oestreich, Lawrence Levit, New York City, Milberg Weiss Bershad & Lerach L.L.P. by Deborah Clark Weintraub, New York City, Lionel Z. Glancy, Los Angeles, CA, for Plaintiffs.

Simpson Thacher & Bartlett by Michael Chepiga, Paul Curnin, New York City, Shearman & Sterling by Stuart Baskin, New York City, Skadden, Arps, Slate, Meagher & Flom L.L.P. by Ira B. Matetsky, New York City, for Defendants.

## OPINION AND ORDER

RAKOFF, District Judge.

The first question raised by the pending motions to dismiss these consolidated class actions is whether the Private Securities Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 737 (the "Reform Act") heightens the scienter requirement for liability in a private securities fraud action by requiring more than "recklessness." The answer is no. The second question is whether the Reform Act makes the pleading of "motive and opportunity" no longer automatically sufficient in this Circuit to raise the required "strong inference" of fraudulent scienter. The answer is yes. The third question is whether the pending complaint alleges particulars giving rise to a strong inference that the defendants acted with the required scienter. The answer is no. The final question is whether the plaintiffs should be given leave to replead to attempt to rectify this shortcoming. The answer is yes.

A few words of explanation may be in order.

This case began as two separate class action complaints filed, respectively, on September 30, 1996 and October 30, 1996. On December 16, 1996, the Court consolidated the actions and appointed lead counsel for each side. On January 23, 1997, a Consoli-

dated Amended Class Action Complaint (the "Complaint") was filed, alleging primary claims against all defendants for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and secondary claims against defendants Beach and Pepsico as "control persons" under 15 U.S.C. § 78t(a).

As set forth in the Complaint, defendant Buenos Aires Embotelladora S.A. ("Baesa") is an Argentinean bottling corporation, organized in 1989, with principal offices in Buenos Aires, Argentina, and Boca Raton, Florida. Its securities are traded on the New York Stock Exchange in the form of "American Depository Shares." At all relevant: times, defendant Charles H. Beach was its President and "Principal Executive Officer." In November, 1993, Baesa entered into an agreement with defendant Pepsico, Inc., by which, among other things, Pepsico acquired nearly 24% of Baesa's common stock in exchange for $35 million, various Pepsi bottling and distribution rights in Argentina and certain other parts of South America, and the right to approve certain Baesa management decisions. Ultimately, in August, 1996, following Beach's resignation, Pepsico took total control of Baesa and, shortly thereafter, announced that Baesa had suffered substantial losses largely attributable to "accounting irregularities." The price of Baesa shares fell precipitously, and these lawsuits by Baesa shareholders followed.

The gist of plaintiffs' 70–page Complaint is that between November, 1995 and August, 1996, Baesa, in concert with Beach and Pepsico, issued numerous false and misleading public statements that materially overstated the company's assets and earnings and effectively concealed the company's deteriorating financial position. Careful inspection of the Complaint reveals, however, that the legally cognizable allegations of fraudulent conduct largely center on financial and other irregularities at Baesa's Brazilian subsidiary, a separate company known as "PCE," that is not a party to this case but the financial statements of which were included in Baesa's public reports. Furthermore, the Complaint is noticeably skimpy in setting forth particular facts from which one might strongly infer that Baesa, Beach (who worked at the Boca Raton office), or Pepsico had knowledge during the class period that the reported Brazilian results were fraudulent.

Accordingly, on March 26, 1997, defendants promptly moved to dismiss the Complaint, contending, *inter alia,* that plaintiffs' had failed to meet the requisite standards for pleading scienter in a securities fraud case.

■ Properly to determine what those standards are, one must first distinguish between the mental state required for securities fraud liability ("scienter") and the level of pleadings required to adequately allege that mental state at the outset of a lawsuit. The Reform Act speaks only to the latter. Specifically, subsection 21D(b)(2) of section 101(b) of the Reform Act, entitled "Required State of Mind," reads in its entirety as follows:

> In any private action arising under [Title I of the Exchange Act] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

Since the Reform Act nowhere defines what the "required state of mind" is for any of the kinds of actions that might be brought under this title, the definition must necessarily be found either elsewhere in the Exchange Act itself or (if the action is judicially implied) in the existing case law. Specifically, in the case of private securities fraud actions implied under section 10(b) of the Exchange Act (and Rule 10b–5 promulgated thereunder), the Supreme Court, in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), determined that a mental state embracing an intent to deceive, manipulate or defraud was required for liability and that negligence would not suffice. *Id.* at 193–94, 96 S.Ct. at 1380–82. The Court left open, however, whether "recklessness"—in the sense, not of gross negligence, but of "a form of intentional conduct"—could constitute such scienter. *Id.* at 193 n. 12, 96 S.Ct. at 1381 n. 12.

Subsequently, virtually every Circuit Court to consider the issue, including the Second Circuit, held that recklessness suffices. *See, e.g., Rolf v. Blyth Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.1978); *Cook v. Avien, Inc.*, 573 F.2d 685, 692 (1st Cir.1978); *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1244 (3d Cir.1989); *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961–62 (5th Cir.1981) (en banc), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380; *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1023–24 (6th Cir.1979); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569–70 (9th Cir.1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719; *Hackbart v. Holmes*, 675 F.2d 1114, 1117–18 (10th Cir.1982); *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir.1989). This is hardly surprising, since "recklessness," in its classic formulations, describes a conscious state of mind that is inherently deceptive, *i.e.*, a conscious and purposeful disregard of the truth about a known risk. *See, e.g.*, Model Penal Code § 2.02(c) ("A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct").

While in certain other contexts, the term may also denote a kind of negligence, *see* Black's Law Dictionary 1270 (6th Ed.1990) ("According to circumstances it may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive, or negligent."), this is not the usage the Supreme Court left open as a possibility in *Hochfelder*. Nor is it the usage adopted by the Circuit Courts in private securities fraud actions. Rather, in the standard formulation in these cases, "[r]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care ... *to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Chill v. General Electric Co.*, 101 F.3d 263, 268 (*quoting Rolf*, 570 F.2d at 47) (emphasis added). *See also* Loss and Seligman, Fundamentals of Securities Litigation at 843 n. 320 (1995) (collecting cases).

While this formulation may suffer from joining negligence-like concepts of conduct to awareness-like concepts of intent, still, on its face, it leaves no doubt that some form of conscious disregard is required. As the Seventh Circuit, which first adopted this definition in this context, noted: "We believe 'reckless' in these circumstances comes closer to being a lesser form of intent than merely a great degree of ordinary negligence. We perceive it to be not just a difference in degree, but also in kind." *See Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790, 793 (7th Cir.1977).

In the securities fraud context, then, "recklessness" is a state of mind—one that may be particularly applicable to cases involving corporate entities, whose "intent" is necessarily a legal construct—and one that most Circuits have held is sufficient to meet the *Hochfelder* definition of scienter. While the Supreme Court remains free to overrule that determination, nothing in the Reform Act purports to do so, and the few cases that might be read to suggest otherwise have simply, in this Court's view, substituted a selective reading of the convoluted legislative history for the clear and unambiguous language of the statute.[1] When the statutory text is so plain, resort to legislative history is neither necessary nor prudent. *See Director, Office*

---

1. *See In re Silicon Graphics. Inc. Sec. Lit.*, 1996 WL 664639 (N.D.Cal.1996) (reaffirmed on motion to reconsider at 1997 WL 285057); *Friedberg v. Discreet Logic Inc.*, 959 F.Supp. 42 (D.Mass.1997); *Norwood Venture Corp. v. Converse. Inc.*, 959 F.Supp. 205 (S.D.N.Y.1997). While some of the language in these cases suggests that Congress rejected "recklessness" as sufficient to satisfy the scienter requirement, the cases may also be read as simply reinforcing the requirement that recklessness in this context include a conscious component. Other cases, addressing the same legislative history, have concluded that Congress in no way disavowed "recklessness." *See Sloane Overseas Fund. Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F.Supp. 1369, 1377 (S.D.N.Y.1996); *Marksman Partners L.P. v. Chantal Pharmaceutical Corp.*, 927 F.Supp. 1297 (C.D.Cal.1996); and *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246 (N.D.Ill.1997). *Cf.* Coffee, "The Future of the Private Securities Litigation Reform Act: Or, Why the Fat Lady Has Not Yet Sung," 51 Bus. Law. 975, 980 (1996) ("the more closely that one examines the legislative history on this point, the murkier the issue gets").

*of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries,* 512 U.S. 267, 280, 114 S.Ct. 2251, 2259, 129 L.Ed.2d 221 (1994); *Shannon v. United States,* 512 U.S. 573, 579, 114 S.Ct. 2419, 2424, 129 L.Ed.2d 459 (1994); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

■ If the Reform Act, then, does nothing to disturb the substantive law of what is the required mental state for a securities fraud violation, it does expressly address, and alter, what is required to plead the requisite scienter. Specifically, the above-quoted provision of the Reform Act requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." This language was suggested by prior law in the Second Circuit that obliged plaintiffs in securities fraud cases to plead particulars raising a "strong inference" of the defendants' fraudulent intent, "either [by] (1) identify[ing] circumstances indicating conscious or reckless behavior by the defendants, or (2) alleg[ing] facts showing a motive for committing fraud and a clear opportunity for doing so." *San Leandro Emergency Med. Group Plan v. Philip Morris Cos.,* 75 F.3d 801, 813 (2d Cir.1996). The statute, however, while adopting the "strong inference" requirement, makes no mention whatever of "motive and opportunity," nor singles out any other special kind of particulars as presumptively sufficient. The conclusion follows from the plain language of the statute that the mere pleading of motive and opportunity does not, of itself, automatically suffice to raise a strong inference of scienter.[2]

This, of course, does not mean that particulars regarding motive and opportunity may not be relevant to pleading circumstances from which a strong inference of fraudulent scienter may be inferred. In some cases, they may even be sufficient by themselves to do so. But, under the Reform Act, and in contrast to prior Second Circuit precedent, they are not presumed sufficient to do so.[3] Rather, under the Reform Act formulation, the pleadings must set forth sufficient particulars, of whatever kind, to raise a strong inference of the required scienter.

■ Applying these conclusions to the instant Complaint, the question then is whether the well-pleaded non-conclusory factual allegations of the Complaint, read most favorably to plaintiffs and with every reasonable inference construed in plaintiffs' favor, state sufficient particulars to reasonably raise a strong inference that a given defendant participated in the making of the allegedly fraudulent representations or omissions, either with knowledge of their falsity or with reckless disregard for a known and obvious danger of their being untrue. While the Complaint arguably might satisfy this standard as to Baesa's Brazilian subsidiary, if it were a party, the law in this Circuit is clear that a subsidiary's fraud cannot be automatically imputed to its corporate parent (Baesa), let alone to the parent's principal officer (Beach) or principal owner (Pepsico). *See Chill v. General Elec. Co.,* 101 F.3d 263 (2d Cir.1996). Thus in *Chill,* the plaintiffs attempted to attribute to defendant General Electric the intent to conceal frauds perpetrated by an employee of one of its subsidiaries, Kidder, Peabody, specifically, a trader at Kidder's government bond trading desk who recorded thousands of fictitious trades, resulting in over $350 million that was wrongly treated as Kidder's income in contravention of generally accepted accounting principles. The Court of Appeals affirmed

---

2. The district courts that have considered this issue in terms of legislative history, *see* note 1, *supra,* are again divided as to the result. *Compare, e.g., In re Silicon Graphics,* 1996 WL 664639 at *9 *with Marksman Partners,* 927 F.Supp. at 1310. This is hardly surprising, since the Congressional byplay that accompanies the enactment of a controversial law like the Reform Act inevitably yields a rich cornucopia of legislative history on which courts of every appetite can feed. But when it comes to interpreting such byplay, courts are poorly equipped to separate

the husks from the kernals. *See generally* Robert A. Katzmann, Courts and Congress 64–65 (1997).

3. Even under prior Second Circuit precedent, moreover, it is not entirely clear that the Court of Appeals always accepted mere allegations of motive and opportunity as sufficient to establish scienter. *See* Douglas M. Parker, "Fraud Under Section 10(b) of the Securities Exchange Act," N.Y.L.J., April 11, 1994, at 1 (discussing cases).

the district court's ruling that the complaint's allegations that General Electric failed to investigate the unexpectedly high profits of its subsidiary and instead had relied on the subsidiary to monitor its own financial reporting were insufficient to establish a strong inference that General Electric had acted recklessly. As the Court stated, "the success, even the extraordinary success, of a subsidiary will not suffice in itself to state a claim that the parent was reckless in failing to further investigate." Moreover, "[a]llegations of a violation of [generally accepted accounting principals] or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim." *Chill,* 101 F.3d at 270.

■ In the case at bar, plaintiffs' pleadings are along much the same lines. Essentially, plaintiffs claim that defendants acted fraudulently or with "reckless disregard" in accepting at face value their Brazilian subsidiary's financials, later discovered to be fraudulent, and preparing public statements that incorporated those results. They further allege that defendants must have been aware of the risk of fraud because they were already aware of mismanagement at the Brazilian subsidiary prior to the issuance of some or all of these statements. *See* Complaint at ¶ 79. But mere knowledge of mismanagement hardly creates a strong inference that the subsidiary's financial statements are false or even that they are not in accordance with generally accepted accounting principles (plaintiffs' chief evidence of the subsidiary's fraudulent intent). *See Acito v. IMCERA Group. Inc.,* 47 F.3d 47, 53 (2d Cir.1995). Nor do the few other well-pleaded particulars alleged by plaintiffs, all of which the Court has considered but need not rehearse here, suffice.[4] Accordingly, the Complaint must be dismissed.

■ This is not necessarily the end of the case, however, for at oral argument plaintiffs' counsel sought leave to replead if the Complaint were dismissed, implicitly representing that additional particulars might be pleaded to repair any defects in the Complaint. Such leave should not be denied where, as here, the pleading requirements of the Reform Act are only beginning to be limned and where, moreover, there is little prejudice to defendants, since discovery remains stayed. *See* 15 U.S.C. § 77z–1(b). Accordingly, while the Consolidated Amended Class Action Complaint is hereby dismissed in its entirety, the Court will defer directing the Clerk to enter judgment for a period of 30 days, that is, until August 8, 1997. If, by close of business on that date, plaintiffs have not filed a further amended complaint, the Clerk will thereupon, and without further order of this Court, enter judgment for defendants dismissing the Complaint with prejudice. Conversely, if a new amended complaint is filed on or before August 8, 1997, counsel for the parties are directed to jointly telephone Chambers at 6:00 P.M. on that date to schedule further proceedings herein.

SO ORDERED.

---

4. For example, plaintiffs' allegations of motive and opportunity, which, in the Court's view would not have been sufficient to avoid dismissal even under the pre-Reform Act standard of the Second Circuit, add nothing meaningful to the overall mix. In particular, plaintiffs have failed to allege, by way of motive, any material "concrete benefits that could be realized by one or more of the false statement and wrongful disclosures alleged." *Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1130 (2d Cir.1994).